IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| BRIANA KATRELL WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 116-002 |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Briana Katrell Williams appeals the decision of the Acting Commissioner of Social Security denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

**I.     BACKGROUND**

Plaintiff applied for SSI on March 5, 2012, alleging a disability onset date of March 1, 2012. Tr. ("R."), pp. 12, 151-54, 177. Plaintiff was twenty-one years old at her alleged disability onset date and was twenty-three years old at the time the Administrative Law Judge ("ALJ") issued the decision currently under consideration. R. 22, 29.

Plaintiff applied for benefits based on allegations of psychotic episodes and depression. R. 76, 177. Plaintiff completed ninth grade. R. 36, 177. Prior to her alleged disability, Plaintiff had never had a full-time job, and her work history consisted of brief jobs at a Dollar Tree, the Salvation Army, and a fast food restaurant. R. 37, 158, 164-65, 220, 222, 227. Plaintiff had also performed part-time day care work in relation to obtaining welfare benefits that, along with food stamps, Plaintiff received to take care of her toddler daughter. R. 42, 222. None of Plaintiff's prior jobs qualified as past relevant work under 20 C.F.R. § 416.965. R. 20.

The Social Security Administration denied Plaintiff's application initially, R. 77-80, and on reconsideration, R. 89-91. Plaintiff requested a hearing before an ALJ, R. 93-94, and the ALJ held a hearing on February 11, 2014. R. 27-54. At the hearing, the ALJ heard testimony from Plaintiff, who appeared with counsel, as well as from Otis Pearson, a Vocational Expert. Id. On April 25, 2014, the ALJ issued an unfavorable decision. R. 9-26.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since March 5, 2012, the application date (20 C.F.R. § 416.971 *et seq*.).

2. The claimant has the following severe impairments: depression, anxiety, and schizoaffective disorder (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with postural and mental limitations. In particular, the claimant can perform work that requires no more than occasional climbing of ladders, ropes, and scaffolds. She must avoid concentrated exposure to unprotected heights or hazardous machinery. Additionally, she is limited to positions requiring only simple,

> rote, and repetitive tasks performed in a low stress work environment (i.e. no fixed or rigid production quotas, no hazardous conditions, and only occasional changes in the work setting). She is further limited to jobs that require only occasional or superficial interaction with the general public; and only occasional interaction with coworkers. The claimant has no past relevant work (20 C.F.R. § 416.965).
>
> 5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including hand packager, garment folder, and remnant sorter (20 C.F.R. §§ 416.969, and 416.969(a)). Therefore, the claimant was not under a disability, as defined in the Social Security Act, since March 5, 2012, the date the application was filed (20 C.F.R. § 416.920(g)).

R. 14-22.

When the Appeals Council ("AC") denied Plaintiff's request for review, R. 1-5, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the ALJ: (1) failed to develop a full and fair record; and (2) erroneously evaluated Plaintiff's credibility. See doc. no. 15 ("Pl.'s Br."). The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. See doc. no. 16 (Comm'r's Br.").

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence,

3

or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

Plaintiff argues the ALJ failed to develop a full and fair record, and this error in not properly developing the record led to an erroneous evaluation of Plaintiff's credibility. See Pl.'s Br., pp. 7-16. The Commissioner asserts the ALJ properly exercised his judgment to determine additional evidence was not needed to decide Plaintiff's claim and properly considered and explained his multiple reasons for determining Plaintiff's subjective complaints were not fully credible. Comm'r's Br., pp. 3-13. As explained below, the ALJ had sufficient information to render an informed decision and properly evaluated Plaintiff's credibility. Therefore, none of Plaintiff's arguments form a valid basis for reversal or remand.

### A. The ALJ Satisfied His Basic Obligation to Develop a Full and Fair Record.

A claimant has the burden of proving her disability and is responsible for providing evidence in support of her claim. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). Nevertheless, "because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." Larry v. Comm'r of Soc. Sec., 506 F. App'x 967, 969 (11th Cir. 2013) (citing Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to obtain additional information by ordering a consultative examination unless the record establishes that such an examination is necessary to enable an ALJ to render an informed decision. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007); Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999); Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988). The regulations also provide the ALJ may order a consultative examination when warranted. See 20 C.F.R. § 416.917. "It is reversible error for an ALJ not to order a

5

consultative examination when such an evaluation is necessary for him to make an informed decision." Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (citation omitted).

Plaintiff argues the ALJ erred by not ordering a consultative examination because the record showed "the absence of much treatment in 2013 and 2014." Pl.'s Br., p. 7. According to Plaintiff, instead of relying on "the multiple significant gaps in medical treatment for almost 9 months, from July 2012 to April 2013 and April 2013 through January 2014" to discount Plaintiff's credibility, (R. 20), the ALJ should have ordered a consultative examination.[1] Plaintiff points to nothing suggesting she ever alleged during the administrative proceedings that additional medical evidence was necessary or requested, and importantly, the ALJ did not make his disability determination solely based on gaps in treatment. "Instead, he considered this failure to seek treatment in [the] context of the entire record, which showed that Plaintiff retained normal speech, cooperative and calm behavior, and full orientation and no psychomotor abnormalities in July 2012, and denied hallucinations or perceptual disturbance in April 2013, among other unremarkable findings." Comm'r Br., p. 6 (citing R. 300, 306).

Indeed, the record contained treatment notes from Dr. Ajai Kalla at American Work, Inc., chronicling Plaintiff's mental health treatment, and as reviewed by the ALJ, Plaintiff reported she was doing fine and not experiencing any side effects from her medication; the treatment notes did not identify significant abnormalities. R. 18 (citing Exs. 5F and 6F, R. 293-305); R. 20 (citing Ex. 7F, R. 306-07). These records memorialize, *inter alia*, Plaintiff was able to work thirty hours per week to obtain welfare benefits, (R. 42, 302), and in April 2013, "seemed to be much better and did not seem to verbalize having any significant anxiety

---

[1]Plaintiff's arguments concerning credibility are examined in detail in Part III.B, *infra*.

6

or psychotic symptoms." (R. 307). Counsel's pre-hearing letter to the ALJ did not mention the need for additional medical evidence, and indeed referenced the evidence from American Work, Inc., upon which the ALJ relied in his decision. R. 224-25. Likewise, at the hearing, the ALJ asked counsel if he considered the record complete, and counsel answered affirmatively. R. 32. Nor did counsel request at the conclusion of the hearing that the record be held open for additional information. R. 53-54.

Importantly, the ALJ also had in the record the opinion of two state agency reviewers who opined Plaintiff was not disabled. Social Security Ruling ("SSR") 96-6p provides that findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review. SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). Robert Koontz, Ph.D., reviewed the medical evidence, noting Plaintiff had been admitted for inpatient psychological treatment over six months prior to the alleged onset date, but it had been in the context of post-partum depression. R. 58. Moreover, a longitudinal review of the treatment records showed Plaintiff's most prominent psychological symptoms were moderated when Plaintiff was compliant with her medication. Id. Dr. Koontz stated a consultative examination was not required. Id. Plaintiff's moderate limitations in concentration and persistence, as well as social interaction, were noted as not substantial and accounted for by the ALJ in his RFC for simple, rote and repetitive tasks performed in a low stress work environment. R. 17, 61-62. The RFC also called for only occasional or superficial interaction with the general public, and only occasional interaction with co-workers. R. 17.

Robbie Ronin, Psy.D., likewise reviewed the medical records and opined a consultative examination was not needed. R. 69. Dr. Ronin noted Plaintiff had some moderate limitations, but those limitations were not substantial and did not preclude the performance of simple tasks, adequate coping, or interacting appropriately with co-workers. R. 71-73. As set forth above, the limitations identified by both Dr. Koontz and Dr. Ronin were accounted for in the ALJ's RFC for Plaintiff.

To the extent Plaintiff argues the ALJ should have investigated Plaintiff's mental health prior to the alleged onset date, the argument misses the mark. The ALJ heard Plaintiff's testimony she had previously had a psychiatric hospitalization for approximately one week because she was "overwhelmed." R. 38. The inpatient treatment notes were part of the record, (R. 226-77), the ALJ acknowledged the prior hospitalization, (R. 18), and Dr. Koontz specifically referenced the hospitalization and the relatedness to post-partum depression, (R. 58). Plaintiff does not explain what other information pre-dating the alleged onset date should have been developed, let alone explain the relevance of any such information to the current disability application.

Moreover, simply listing various diagnoses and medications does not support the conclusion that additional medical evidence was needed to develop a full and fair record for the disability determination. Not only is the ultimate conclusion on disability an issue reserved for the Commissioner, SSR 96-5p, but disability hinges on the functional limitations attendant to diagnoses that would prevent an individual from working, not the mere existence of an impairment. See Moore, 405 F.3d at 1213 n.6 ("[T]he mere existence of these impairments does not reveal the extent to which they limit [the claimant's] ability to work or undermine the ALJ's determination in that regard."); see also Wind v. Barnhart, 133 F. App'x 684, 690-91

(11th Cir. 2005); 20 C.F.R. § 416.920(e)-(f). The ALJ determines the RFC based on an analysis of all the relevant record evidence. 20 C.F.R. §§ 416.945(a) & 416.946(c). The ALJ must give consideration to physician opinions in accordance with the applicable rules and regulations, but the ALJ is not constrained to formulating the RFC based solely on such opinions. See Langley v. Astrue, 777 F. Supp.2d 1250, 1258 (N.D. Ala. 2011) (explaining that Eleventh Circuit "does not require an RFC from a physician" to deny disability benefits) (citing Green v. Soc. Sec. Admin., 223 F. App'x 915, 923-24 (11th Cir. 2007)).

Therefore, a consultative examination was not necessary to obtain a physician's opinion as a basis for the RFC or to further support the ALJ's ultimate disability determination made after reviewing the entirety of the administrative record, which includes treatment records from American Work, Inc., Serenity Behavioral Health Systems, the opinions of two psychological consultants, Plaintiff's testimony at the hearing, as well as functional reports of Plaintiff's daily activities. In sum, the ALJ was not left to speculate about Plaintiff's condition, and there was sufficient information in the record for the ALJ to make an informed decision based on competent medical evidence. See Ingram v. Comm'r Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007) (recognizing ALJ not required to seek additional medical information so long as record contains sufficient information to make an informed decision on a claimant's application).

### B. The ALJ Properly Analyzed Plaintiff's Subjective Complaints.

In an argument that dovetails with her contention the ALJ failed to adequately develop the record, Plaintiff also argues the ALJ erred in assessing her credibility as it relates to her subjective complaints she could not work because of psychotic episodes and depression. Pl.'s Br., pp. 13-16; R. 17, 177. According to Plaintiff, the ALJ did not adequately investigate the

9

reason for treatment gaps in the record and unfairly relied on Plaintiff's poor work history as a reason supporting his credibility finding. The Commissioner maintains the ALJ explained his credibility finding in accordance with the applicable regulations, properly relying on Plaintiff's daily activities and sporadic work history, as well as gaps in her treatment, to support his decision. Comm'r's Br., pp. 10-12.

### 1. The Standard for Evaluating Subjective Complaints

The Eleventh Circuit has established a three-part standard for evaluating a claimant's subjective complaints. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Under the Eleventh Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. Id. When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995). Under the applicable regulations, the ALJ must consider "all evidence, including subjective statements about the intensity, persistence, and functionally limiting effects of pain [as well as] the objective medical evidence, laboratory findings and statements from treating or nontreating sources about how the symptoms affect the claimant in deciding the issue of disability." Jarrell v. Comm'r of Soc. Sec., 433 F. App'x 812, 814 (11th Cir. 2011) (citing 20 C.F.R. § 404.1529(c)(4)).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the

Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980).[2] As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.

Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (internal quotation marks and citations omitted). As explained below, the ALJ properly conducted the Holt analysis and reached the conclusion that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her subjective complaints concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible.

### 2. The ALJ Thoroughly Discussed and Properly Discredited Plaintiff's Subjective Complaints.

Plaintiff concedes the ALJ identified multiple reasons for his credibility finding:

> [Plaintiff's] failure to take psychiatric medications at certain times showed she was "not serious about her health," her reports were noted to be vague on one examination, she has worked since her alleged onset date, there were multiple gaps in her treatment in 2013 and 214, and she had a poor work history. R. 18-20.

Pl.'s Br., p. 13. Plaintiff argues, however, these reasons are insufficient because they are the product of speculation and ignore the totality of the evidence or are otherwise a result of the ALJ's failure to adequately develop the record. Id.

The Commissioner likewise notes the multiple reasons the ALJ gave for discrediting Plaintiff's subjective complaints, a list of reasons similar to those acknowledged by Plaintiff. Comm'r's' Br., pp. 10-12. Where the parties differ is the *interpretation* of the record as it relates

---

[2]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

11

to the ALJ's decision not to credit the severity of Plaintiff's claimed subjective complaints. However, the question is not whether the ALJ could have reasonably credited Plaintiff's complaints, but rather, "whether the ALJ was clearly wrong to discredit" them. Werner v. Comm'r of Soc. Sec., 421 F. App'x 935, 939 (11th Cir. 2011).

First, as explained above, the Court rejects the argument the ALJ failed to adequately develop the record. Second, the Court rejects the argument it was improper for the ALJ to consider Plaintiff's lack of a consistent work history as a possible indication of "lack of motivation to work rather than a lack of ability." R. 20. Indeed, the Eleventh Circuit recently approved of an ALJ considering a claimant's lack of earnings as part of valid a credibility determination that also cited, as the ALJ did in Plaintiff's case, medical records. See Stultz v. Comm'r of Soc. Sec., 628 F. App'x 665, 669 (11th Cir. 2015).

Third, minimal or no treatment for an alleged disabling condition may be validly considered by an ALJ in discrediting a claimant's subjective complaints. Castle v. Colvin, 557 F. App'x 849, 853 (11th Cir. 2014); Gamble v. Colvin, No. 5:13-CV-01959-SLB, 2015 WL 2095064, at *6 (N.D. Ala. May 5, 2015). Plaintiff's suggestion the ALJ was required to investigate whether a change in insurance accounted for gaps in treatment is a red herring. Plaintiff scrupulously avoids saying she had no insurance or any means of support such that she could not afford any treatment, only that a change in insurance may have prevented her from seeing her *preferred* doctor. Plaintiff does not cite the Court to any case law suggesting a gap in treatment may not be validly considered by the ALJ based solely on the conclusory statement a claimant had access to treatment, but not by the provider of her choice.

In addition, the ALJ carefully compared Plaintiff's subjective complaints to the objective evidence to determine whether Plaintiff's medical conditions could be expected to give rise to

12

the level of limitations she claimed. The ALJ acknowledged doctors had diagnosed Plaintiff's symptoms as depression, anxiety, and schizoaffective disorder, but he also went on to review treatment records showing episodes of improvement or regression depending on Plaintiff's adherence to prescribed medicinal regimens. R. 19-20 (citing Exs. 5F, 6F, 7F; R. 293-307). Plaintiff argues the ALJ did not consider her testimony suggesting she had not taken medication either because of a change in insurance, (R. 40), or because she was pregnant. Pl.'s Br., pp. 8, 12-13. A review of the cited testimony shows the questioning was not only about Plaintiff not taking medicine for approximately two months prior to the hearing, but also related to when Plaintiff had last been to American Work, Inc., for treatment and whether her medication had been discontinued at that time. R. 40. However, Plaintiff also testified that she was not taking medicine at the hearing because she was pregnant, (R. 35), but was feeling fine other than slight stress from the hearing process, a fact the ALJ noted was contradictory to prior reported hallucinations. R. 18, 39. Additionally, treatment notes cited by the ALJ show providers questioning Plaintiff's compliance with the prescribed medicinal regimen during multiple visits in 2012, prior to the change in insurance coverage. R. 300, 302 (part of Ex. 6F cited at R. 15, 18, 19).

The ALJ also reviewed Plaintiff's longitudinal reports of doing well versus reports of hallucinations, paranoia, and anxiety attacks, some of which were described in treatment notes as "vague." R. 19, 302. The ALJ further noted treatment providers stated Plaintiff was cooperative and calm, had full range and basically appropriate affect, logical and goal directed thought processes, (R. 18-19 (citing Exs. 5F, 6F, 7F)), up until one month prior to the administrative hearing. In January 2014, Plaintiff alleged to a new treatment provider a sad mood, always being anxious, experiencing panic attacks, poor concentration and memory, and visual hallucinations,

13

but the actual assessment at that January 2014 appointment was "unremarkable." R. 20 (citing Ex. 8F, R. 308-09). Plaintiff points to nothing in the medical record from any treatment provider suggesting Plaintiff could not work under the limitations the ALJ put in place in the RFC.

The ALJ also juxtaposed Plaintiff's claimed restrictions with other statements about her participation in activities of daily living such as attending to her daily hygiene, performing household chores, caring for her minor child, preparing meals, playing with her toddler daughter, feeding herself, handling daily finances, shopping for necessities, operating a motor vehicle, socializing with others, going out to dinner, and walking up to half a mile. R. 15, 17 (citing Ex. 4E); see also R. 45-50 (testifying as to daily activities). An ALJ may consider other activities of daily living in assessing a claimant's disability. See 20 C.F.R. §§ 416.912(b)(1)(iii) and 416.929(c)(3)(i); May v. Comm'r of Soc. Sec., 226 F. App'x 955, 958-59 (11th Cir. 2007); Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987).

The ALJ also considered the statements of Plaintiff's mother and a former employer who listed various difficulties Plaintiff had when working as a requirement for her welfare benefits. R. 18, 193-203. However, those statements were given only partial weight because those opinions conflicted with the other evidence of record, as reviewed by the ALJ, and because of the possibility the statements were made in sympathy for Plaintiff's attempt to obtain disability benefits. R. 18. Moreover, many of the difficulties noted by the former employer, (R. 201-03), were accounted for by an RFC limiting Plaintiff to simple work in a low stress environment, requiring limited interaction with the public and co-workers. R. 17. The ALJ also noted Plaintiff had denied working since her alleged onset date. R. 19. However, her documented work activity in 2013 to obtain welfare benefits not only undercut her credibility, but also supported his conclusion Plaintiff was not disabled. R. 19, 222.

In sum, the ALJ did not rely solely on one aspect of the record to discredit Plaintiff's subjective complaints, but instead relied on the record evidence in total in discrediting Plaintiff's subjective complaints. The ALJ relied on the medical record - including treatment gaps, vague descriptions of symptoms, and inconsistent compliance taking prescribed medicine - a poor work history, and reported activities of daily living. Much of Plaintiff's argument goes to how, not whether, the ALJ weighed the evidence, a task beyond this Court's purview. Cornelius, 936 F.2d at 1145. Although Plaintiff may disagree with the conclusion reached by the ALJ, the credibility determination is supported by substantial evidence.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 20th day of January, 2017, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA